United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>CHARNETTE WALKER,<br><br>Debtor. | Case No. 17 BK 33957<br><br>Chapter 13<br><br>Judge: Hon. Jack B. Schmetterer |

**MEMORANDUM OPINION ON THE DEBTOR'S
MOTION FOR TURNOVER [DKT. NO. 22]**

This matter originally came before the Court on the Debtor's Motion for Turnover. Debtor Charnette Walker's ("Debtor") Motion to Compel Turnover. In open court on December 18, 2017, an outline of the Opinion now granting that motion was announced. Though Debtor has since withdrawn her Motion evidently having made peace with the City, the previously announced Opinion is being released so that the bar may know the reason why similar motions will be granted.

**UNDISPUTED FACTS**

1. Debtor filed her Chapter 13 bankruptcy petition on November 13, 2017. (Dkt. No. 1.)
2. On November 10, 2017, three days prior to the filing of Debtor's bankruptcy petition, the City booted and subsequently impounded Debtor's 2003 Chevrolet Tahoe. (Dkt. No. 11.)
3. On November 14, 2017, the day after Debtor filed her bankruptcy petition, Debtor requested that the City release her vehicle. (Dkt. No. 11.)
4. That same day, the City responded that it would not be releasing the vehicle, relying on a ruling, *In re Avila*, 566 B.R. 558 (Bankr. N.D. Ill. 2017). (Dkt. No. 11.)
5. The City informed the Debtor that in order to obtain the release of her vehicle, she would need to pay either $1,000.00 or 25% of the total debt that was owed to the City, whichever was lesser, and include the City as a secured creditor in her Chapter 13 plan. (Dkt. No. 11.)
6. The City did not at that time explain how it arrived at the "debt," nor did it offer the Debtor an accounting of the fees and repossession costs of booting and impounding her vehicle. (Dkt. No. 11.)
7. The City only indicated that the total amount of its claim and "debt" is $10,517.67. (Dkt. No. 11; Claim No. 2-1).
8. Debtor filed her Motion to Compel on November 15, 2017.

1

9. In her Motion, Debtor sought to compel the City to disclose the amount of their claim that constitutes storage and repossession fees and, once that amount has been paid, release the vehicle.

10. At the Court's initial hearing on this Motion, neither the Debtor nor the City expressed any desire to further brief the matter. The Motion to Compel was taken under advisement on November 22, 2017.

11. The City did not initialy file any Response to the Motion. However, the City did file a brief on December 18, 2017 after being informed that the Court was considering an Order for turnover of the car. (Dkt. No. 26.)

12. An Order and Opinion were entered in favor of the Debtor on December 12, 2017 (Dkt. Nos. 16 and 17), but later withdrawn on Court's Motion *sua sponte* on December 19, 2017. (Dkt. No. 27.)

13. On December 19, 2017, the Debtor withdrew her Motion to Compel Turnover (Dkt. No. 29.)

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

## DISCUSSION

It is necessary to review the analysis by the Seventh Circuit panel in *Thompson v. General Motors Acceptance Corporation, LLC*, 566 F.3d 699 (7th Cir. 2009) and Judge Cassling's analysis in *In re Avila*, 566 B.R. 558 (Bankr. N.D. Ill. 2017). It is held below that the conclusion that was rendered in *Avila* is incorrect and the ruling in *Thompson* applies here.

Hundreds of thousands of creditors have their rights affected by the automatic stay each year. In *Thompson*, the Seventh Circuit held that creditors who exercised control over vehicles belonging to debtors by repossessing them prebankruptcy would have to turn over those vehicles upon the request of a debtor once a bankruptcy has been filed. 566 F.3d at 701. In that case, the secured creditor, the seller of the vehicle in question, refused to relinquish possession of the vehicle because it felt that the debtor could not adequately protect its interests as required by the

2

Bankruptcy Code. *Id.* at 700. The secured creditor then repossessed debtor's vehicle prepetition. *Id* at 701. The Circuit held that the act of the creditor, "of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3) of the Bankruptcy Code." *Id.* at 703. As a result, the Circuit determined that, "[t]he right of possession is incident to the automatic stay. A subjectively perceived lack of adequate protection is not an exception to the stay provision and does not defeat this right." *Id.* at 704. As a result, the Seventh Circuit held that, "upon the request of a debtor that has filed for of bankruptcy, a creditor must first return an asset in which the debtor has an interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court. *Id.* at 708. In effect, the Circuit applied the automatic stay to the prebankruptcy repossession of the debtor's vehicle.

Thus, until Judge Cassling's *Avila* decision, the City was just such a creditor, required to turnover vehicles upon request of a bankrupt debtor. In *Avila*, the City of Chicago sought a declaration that its continued postpetition retention of a Chapter 13 debtor's vehicle, seized prepetition, did not violate the automatic stay. 566 B.R. at 559. Judge Cassling held that "a creditor's post-petition possession of property necessary to the perfection of a prepetition lien does not violate the stay," because it could rely on the exception to the stay found in 11 U.S.C. § 362(b)(3), writing that because the City did not have an underlying consensual lien to fall back upon, as the creditor in *Thompson* did, it was necessary for the City to retain possession of the vehicle in order to maintain perfection of its possessory lien on the debtor's vehicle and was allowed pursuant to 11 U.S.C. 362(b)(3). *Id* at 562 (quoting *In re Ingram*, 508 B.R. 98, 102 (Bankr. E.D. Wis. 2014)). While the conclusion that post-petition possession of the property was necessary for the *perfection* of the City's possessory lien is incorrect, *Avila* was otherwise correct in saying that possession of the property was necessary to the *retention* of the prepetition possessory lien. This Opinion disagrees with *Avila* for two reasons.

First, the language of 11 U.S.C. § 362(b)(3) is very clear:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
    (3) under subsection (a) of this section, **of any <u>act to perfect, or to maintain or continue the perfection of, an interest in property</u>** to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title

3

11 U.S.C. § 362(b)(3) (emphasis added). The *Avila* case and others relied on by the City held that by simply maintaining possession of the vehicle in order to retain perfection of a possessory lien, the creditor fell under the protection afforded by the § 362(b)(3) exception. *In re Avila*, 566 B.R. 558, 562 (Bankr. N.D. Ill. 2017); *In re Ingram*, 508 B.R. 98, 102 (Bankr. E.D. Wis. 2014). However, the plain language of the statute requires an "act," and the City has not demonstrated that mere possession of the Debtor's property is sufficient to satisfy that statutory requirement. *See In re Tradewinds*, 394 B.R. 614, 621 (Bankr. S.D. Fla. 2008) (holding that "mere possession" of an aircraft did not sufficiently perfect a creditor's mechanic's lien pursuant to Florida law).

Section 362(b)(3) does not include the language "act or omission," though *Avila* and other cases cited by the City felt that "omission" was an implied term. The plain statutory language does not say that the mere possession of the debtor's vehicle that is required to retain their earlier-perfected possessory lien affords the possessory lien holder the protection of 11 U.S.C. § 362(b)(3). The City may, of course, take some action after a debtor has filed for bankruptcy to maintain the perfection of their possessory lien. In order to do so, the City must, like thousands of other creditors, file a Motion to Modify the Automatic Stay.

The *Avila* decision allowed the City to retain possession of a debtor's vehicle postpetition without filing any motion granting them permission to do so. While Judge Cassling is correct that *Thompson* did not directly address the issue of possessory lien holders maintaining perfection pursuant to 11 U.S.C. 362(b)(3), the opinion did note that for any creditors worried about the potential depreciation or destruction of their collateral, between the period it transfers the asset back to the debtor but before a hearing on adequate protection is set, the creditor does have a procedure available to combat that problem, the emergency motion allowed under Federal Rule of Bankruptcy Procedure 4001(a)(2). *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 707 (7th Cir. 2009) (quoting *In re Colortran, Inc.*, 210 B.R. 823, 827–28 (B.A.P. 9th Cir. 1997), aff'd in part, vacated in part, 165 F.3d 35 (9th Cir. 1998) ("If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard it may request an emergency hearing under § 362(f).")).

In the City's brief, filed on December 18, 2017, it argues that the Circuit's holding in *Thompson*, and the *Whiting Pools* Supreme Court decision upon which that holding relies apply

4

only allow the modification of the procedural rights of a creditor, pursuant to 11 U.S.C. § 542(a). The City argues that if it is held that 11 U.S.C. § 362(b)(3) is inapplicable in this case, such a holding would effectuate the automatic avoidance of its lien and thus, alter its substantive rights, contrary to *Whiting Pools*. However, the City is incorrect in its analysis, as the inapplicability of 11 U.S.C. § 362(b)(3) would only alter the procedure which the City would need to follow in order to retain their possessory lien. The Supreme Court in *Whiting Pools* stated that only "procedural rights" are modified by 11 U.S.C. 542(a). *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206 (1983). However, by following the *Thompson* decision, the City's substantive rights are not being modified. The City is only being asked to do what other creditors must do when the automatic stay interferes with their rights, to file a Motion to Modify the Automatic Stay. The *Thompson* opinion makes clear that the City has a remedy to retain its possessory lien, namely filing an Emergency Motion. *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 707 (7th Cir. 2009). Thus, only the City's procedural rights are being modified and there is no contradiction with *Whiting Pools*.

The City apparently wants to avoid payment of fees to file an Emergency Motion to Modify the Automatic Stay in each case where a debtor is requesting the turnover of their vehicle. That is the crux of the matter – whether the City can avoid paying these fees, but continue to preserve its possessory lien. Under the principle of *stare decisis*, inferior or lower courts are bound to follow the decisions of superior courts. *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987). Thus, the *Thompson* decision controls this case. It suggests that the appropriate remedy for a creditor in the City's shoes is to file an Emergency Motion to Modify the Automatic Stay to allow itself the opportunity to protect its possessory lien. The City does not get the protection of 11 U.S.C. § 362(b)(3) simply by passively possessing the debtor's vehicle.

The rest of the City's arguments in this case are perfunctory, given that it is required, by *Thompson*, to turn vechicles to debtors upon the request of the debtors in bankruptcy. 566 F.3d at 707-08 ("[U]pon the request of a debtor that has filed for of bankruptcy, a creditor must first return an asset in which the debtor has an interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court."). While the City and the Debtor in this case have come to an agreement resulting in the withdrawal of Debtor's Motion to Compel Turnover, the holding of *Thompson* will apply to all similarly situated debtors. Pursuant

5

to *Thompson*, the City will be required to turnover the debtor's vehicle upon the debtor's request and, in order to protect its possessory lien, will be required to file an Emergency Motion to Modify the Automatic Stay.

## CONCLUSION

While the City and the Debtor in this case have reached an agreement resulting in the withdrawal of Debtor's Motion to Compel Turnover, this opinion will serve as instruction for the City in cases where similarly situated debtors request the turnover of their vehicle. For the foregoing reasons, pursuant to the *Thompson* decision, the City is required to turn over a debtor's vehicle upon his or her request, and in order to protect its possessory lien, must file an Emergency Motion to Modify the Automatic Stay.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this _____ day of December, 2017